**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Branson A. L.,

Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

Defendant.

No. 23-cv-0015 (MJD/DLM)

**REPORT AND RECOMMENDATION**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Branson A. L. seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for benefits. This matter is before the Court on the parties' cross-Motions for Summary Judgment. (Docs. 9–10 (Plaintiff's motion and supporting memorandum), 13–14 (Defendant's motion and supporting memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Plaintiff's motion for summary judgment be granted in part and denied in part, Defendant's motion for summary judgment be granted in part and denied in part, and this matter be remanded to the Commissioner for further administrative proceedings consistent with this Court's recommendation.

## BACKGROUND

As a minor, Plaintiff received Title XVI disability benefits. (Tr.[1] at 15, 124, 235.) Once he turned 18 years old, the Social Security Administration ("SSA") determined that he no longer qualified for those benefits effective June 24, 2019. (Tr. at 15.) Plaintiff requested reconsideration of that decision, and the SSA held a hearing before a Disability Hearings Officer ("DHO") on February 20, 2020, at which both Plaintiff and his father testified. (Tr. at 121–35.) The DHO issued a decision dated February 28, 2020, finding that Plaintiff was not disabled and was thus ineligible to continue receiving benefits. (Tr. at 107–19.) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on November 29, 2021. (Tr. at 41–85.) Counsel represented Plaintiff at the hearing, and Plaintiff testified on his own behalf. (Tr. at 41–67.) Plaintiff's father also testified, as did a vocational expert. (Tr. at 67–85.)

On December 30, 2021, the Commissioner sent a notice of an unfavorable decision to Plaintiff. (Tr. at 12–34.) The ALJ recognized that Plaintiff suffers from several severe impairments, including autism, a learning disorder, major depressive disorder, and pectus carinatum (a deformity of the chest wall). (Tr. at 17.) Yet despite Plaintiff's mental and physical impairments, the ALJ found that he is not disabled. (Tr. at 27.) In so doing, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on March 6, 2023. (Doc. 7.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

occasionally lift and/or carry 50 pounds; frequently lift 25 pounds; stand and/or walk for about 6 hours of an 8-hour workday; sit for about 6 hours of an 8-hour workday; understand, remember, and carry out simple, routine instructions; occasionally experience changes in the work setting; and engage in only brief and superficial interactions with the public. (Tr. at 20.) In reaching these conclusions, the ALJ credited the testimony of the vocational expert at the hearing that Plaintiff could perform jobs that exist in the national economy, including a hand packager (Dictionary of Occupational Titles ("DOT") No. 920.587-018), laundry laborer (DOT No. 361.387-018), and industrial cleaner (DOT No. 381.687-018). (Tr. at 27.) Plaintiff appealed the ALJ's decision, but the Appeals Council denied his request for rehearing, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–6.)

Plaintiff then timely filed this lawsuit seeking judicial review of the Commissioner's decision. He specifically challenges the ALJ's determinations about the persuasive value of the prior administrative medical findings from state agency licensed psychologists Ryan Schaefer, Psy.D., Mera Kachgal, Ph.D., L.P., and Ray M. Conroe, Ph.D., L.P., as well as the ALJ's RFC determination that Plaintiff could handle the stressors of a workplace based on his management of settings such as high school, his home, and medical provider offices.

**ANALYSIS**

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). If substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ used erroneous legal standards, or if they incorrectly applied the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[2] for evaluating SSI claims. Rather, Plaintiff argues that

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior

reversal is warranted for two reasons: first, because the ALJ legally erred by giving outsized and inconsistent persuasive value to the state psychologists' prior administrative medical findings without providing sufficient explanations for doing so; and second, because substantial evidence in the record does not support the ALJ's RFC determination where he failed to adequately consider whether Plaintiff's functionality in the structured, supported environments of home, school, and medical appointments translates to Plaintiff's functionality in a full-time work environment. The Court will take each of these two arguments in turn.

## I. The ALJ did not legally err in determining the persuasive value to assign to the state agency psychologists' prior administrative medical findings.

Plaintiff's first argument generally is that the ALJ legally erred by giving outsized and inconsistent persuasive value to the state psychologists' prior administrative medical findings. Plaintiff claims these errors stem from the ALJ's failure to follow the regulations that govern the persuasive value of prior administrative medical findings found at 20 C.F.R. § 416.920c.[3] The Commissioner responds that the ALJ explained why he accepted most, but not all, of the expert findings after comparing those findings to other evidence in the record, just as the regulations require.

---

work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

[3] Plaintiff filed his claim on January 4, 2023, so 20 C.F.R. § 416.920c governs how an ALJ evaluates prior administrative medical findings of the state agency psychologists. *See Andrew H. S. v. Kijakazi*, No. 20-cv-1553 (SRN/HB), 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022), *R. and R. adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022) (citing 20 C.F.R. § 416.920c(c)(1)–(5)) (discussing that 20 C.F.R. § 416.920c applies to the consideration of prior administrative medical findings for claims filed on or after March 27, 2017).

More specifically, the first reason Plaintiff argues the ALJ erred in his treatment of the state psychologists' prior administrative medical findings is because the psychologists only considered materials up to 2019. Plaintiff claims that the ALJ should have afforded the psychologists' findings less persuasive value when making his determination in 2022 with the benefit of more recent medical records.

The Court agrees that for the short duration of Plaintiff's adulthood relevant here, the record evidence in the intervening period between the psychologists' prior administrative medical findings in 2019—and the ALJ's decision in 2022—is important. It is also true that ALJs are tasked with considering such intervening period evidence by regulation under 20 C.F.R. § 416.920c(d), which states,

> When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

*Id.*

Here, the ALJ complied with the regulations because he considered evidence from *after* the state psychologists offered their prior administrative medical findings. The ALJ held a hearing in this matter in November 2021 during which he received testimony from Plaintiff and his father about Plaintiff's functional abilities at that time. (Tr. at 41–85.) During that hearing, the ALJ confirmed the scope of the exhibits that would comprise the record, including evidence from as late as November 2021—the same month as the hearing. (Tr. at 44.) The ALJ explicitly referenced evidence from after the 2019 psychologists' findings in his decision, for example, considering "[o]utpatient progress notes since [Dr.

Conroe's] reconsideration review[.]" (*See, e.g.*, Tr. at 23–25.) Plaintiff has provided no persuasive support for his assertion that the Court should remand this action with instructions for the SSA to solicit an updated agency consultant's findings. Therefore, the Court respectfully disagrees with Plaintiff that the ALJ failed to consider interim evidence received after the state psychologists issued their 2019 prior administrative medical findings, or that remand for an updated evaluation is warranted here.

Plaintiff also argues that the ALJ should have given greater persuasive value to Dr. Schafer's administrative medical findings because Dr. Schafer actually met with Plaintiff, whereas Drs. Kachgal and Conroe did not. Turning to what the regulations require under 20 C.F.R. § 416.920c, an ALJ must consider a number of factors when allocating persuasive value to a consultant's findings, with the factors of supportability and consistency deemed the most important. 20 C.F.R. § 416.920c(a), (b)(2); *see also Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases concluding that an ALJ's failure to address and explain supportability and/or consistency warranted remand). In other words, an ALJ's allocation of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision.

While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and

nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a psychological expert's prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)). Therefore, the Court will now consider under a legal error standard whether the ALJ followed 20 C.F.R. § 416.920c concerning the persuasive values he assigned the state consultants' findings.

It is true that among the factors that an ALJ must consider when evaluating prior administrative medical findings is the "[e]xamining relationship" of the agency consultant. 20 C.F.R. § 416.920c(c)(3)(v). This factor makes sense because "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." *Id.* However, this "examining relationship" factor falls under the factors that the SSA "may, but [is] not required to, explain" in an SSI determination, unlike the mandatory factors of "supportability" and

"consistency" which an ALJ must discuss. *Id.* § 920c(b)(2). Here, the ALJ discussed the two mandatory factors. Therefore, the Court finds no legal error in the ALJ's explanations of the persuasive value he assigned to the psychologists' prior administrative medical findings even though he found the non-examining psychologist' prior administrative medical findings more persuasive than those of the examining psychologist.

Next, Plaintiff argues that the ALJ also legally erred in failing to explain, pursuant to § 416.920c, why he did not adopt certain limitations recommended by the state psychologists. Plaintiff contends that although the ALJ found Dr. Kachgal's and Dr. Conroe's prior administrative medical findings persuasive, he failed to adopt their recommended limitations on Plaintiff's interactions with supervisors and coworkers in crafting his RFC. Dr. Kachgal found that Plaintiff should have "only brief and uncomplicated workplace interactions[,]" and Dr. Conroe later concurred with these findings. (Tr. at 587, 626.) The ALJ found "Dr. Kachgal's and Dr. Conroe's prior administrative medical findings . . . persuasive because of the supporting narrative analysis and the consistency with other medical evidence in the record[.]" (Tr. at 25 (citing 20 C.F.R. §§ 416.913a, 416.920c(c)).)

As an initial matter, Drs. Kachgal and Conroe do not explicitly reach a finding on Plaintiff's limitations as to workplace interactions with supervisors and coworkers, although there is arguably an implication about such limitations in recommending interactions be generally "brief" and "uncomplicated" in the workplace. In fact, it is Dr. Schafer who explicitly reaches such a finding, stating that "[Plaintiff] has the ability to have superficial contact with coworkers and supervisors." (Tr. at 583.) Yet the ALJ found

Dr. Schafer's prior administrative medical findings only partially persuasive "[d]ue to the lack of support and inconsistencies with other evidence in the record[.]" (Tr. at 26.) The ALJ opined that Dr. Schafer's findings "[t]hat the [Plaintiff] is limited to only superficial contact with coworkers and supervisors is inconsistent with the claimant's ability to interact at his current job." (Tr. at 25–26.) This explanation about why Plaintiff's RFC does not include limitations impliedly recommended by Drs. Kachgal and Conroe—and expressly recommended by Dr. Schafer—satisfies the legal requirements set forth in 20 C.F.R. § 416.920c. As a result, the Court finds no legal error in the ALJ's explanation for why he was not persuaded that Plaintiff's RFC should include limitations on workplace interactions with supervisors and coworkers.

Plaintiff next argues that the ALJ also legally erred because he failed to explain the supportability and consistency factors when rejecting Dr. Schafer's prior administrative medical findings on Plaintiff's difficulties with concentration, understanding social cues and rules, and handling entry-level workplace stress without support. In evaluations during April and May 2019, Dr. Schaefer found that Plaintiff would "have difficulty with some social cues and social rules[,]" and would "have a difficult time handling entry level workplace stress if not given support[.]" (Tr. at 583.) Dr. Schafer also noted that "claimant will have difficulty with concentration" but "has the ability to persist at a reasonable pace on simple tasks." (*Id.*) While the ALJ agreed with Dr. Schafer's assessment that Plaintiff's difficulty concentrating would not prevent him from understanding simple information and following simple instructions to complete tasks at a reasonable pace, the ALJ disagreed with Dr. Shafer that Plaintiff could not manage the stress of an entry-level workplace

without support. (Tr. at 25.) The ALJ cited record evidence such as Plaintiff's graduation from high school, regular counseling, lack of prescribed medications, ability to maintain personal hygiene, and work as a cashier to demonstrate that Dr. Shafer's prior administrative medical findings on this point lacked support from, and consistency with, the record. (Tr. at 25–26.)

Plaintiff points to various evidence in the record to show that the ALJ should have found Dr. Shafer's prior administrative medical findings more persuasive because Plaintiff has been fired from two entry-level jobs, struggles to make eye contact, exhibits mood issues, is often restless and distractable, and self-isolates. (Tr. at 75–76, 122, 260, 708, 720–42, 744.)

The Court finds that this argument conflates the substantial evidence and legal error standards and invites an improper reweighing of the evidence. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)) ("We do not re-weigh the evidence presented to the ALJ"). When a court reviews a plaintiff's argument that an ALJ failed to follow 20 C.F.R. § 416.920c, its inquiry is not whether it disagrees with the ALJ's explanation of the supportability and consistency factors based on the record, which would be an improper reweighing of the evidence. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (citing *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Instead, a court reviews whether the ALJ *explained the required factors*, and if so—and even if the court disagrees with the ALJ's explanation—it must find no legal error. *See, e.g.*, *Berry v. Kijakazi*, No. 4:20-cv-0890 (RLW), 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021). In other words, there are two standards a court uses:

whether the ALJ followed applicable federal regulations (a legal error challenge requiring a legal error review), and whether substantial evidence supports the ALJ's conclusions (a substantial evidence challenge requiring a substantial evidence review).

Here, the challenge is one of legal error. But the ALJ provided the required regulatory explanation of supportability and consistency in finding Dr. Schafer's prior administrative medical findings only partially persuasive. Therefore, Plaintiff's proffer of record evidence to support an alternative outcome cannot alter the Court's finding that the ALJ followed the regulations and did not legally err in evaluating Dr. Schafer's findings because he sufficiently explained supportability and consistency under 20 C.F.R. § 416.920c.

## II. Substantial evidence does not support the ALJ's RFC determination about Plaintiff's ability to sustain full-time work-related activities.

In Plaintiff's second argument, he contends that substantial evidence does not support the ALJ's RFC determination because the ALJ reached it based on incorrect assumptions. Specifically, Plaintiff argues that the ALJ improperly presumed that the stressors of Plaintiff's supportive high school, home, and medical provider environments approximate a workplace environment. To support his position, Plaintiff argues that graduation from high school was only possible for him because of substantial supports as the record shows, and that when those supports have not present in subsequent jobs, employers have terminated him. Plaintiff also points to caselaw where courts have reversed an ALJ's determination because the ALJ improperly assessed functionality without regard

to environmental contexts, finding such determinations not substantially supported by records much like the record here.

The Commissioner responds that Plaintiff's second argument merely repeats a portion of his first argument—that the ALJ's RFC failed to accurately reflect the accommodations necessary for Plaintiff to manage entry-level job stressors. Defendant argues that because Plaintiff bears the burden to demonstrate what his RFC should be, and because he failed to prove what more should have been included in it, there is no reason to disturb the ALJ's decision.

As an initial matter, the Court finds that Plaintiff's second argument does not merely repeat a portion of his first. In his first argument, Plaintiff contends that the ALJ legally erred by failing to follow the governing regulation, 20 C.F.R. § 416.920c, when addressing the persuasive values assigned to agency consultants' prior administrative medical findings, including findings about Plaintiff's ability to manage entry-level job stressors. Here, Plaintiff makes a distinct argument under a different legal theory—substantial evidence—essentially claiming that the ALJ's conclusion does not follow from the evidence in the record as a whole. *See Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)).

Turning to that evidence, Plaintiff participated in special education during elementary school. (Tr. at 322.) During high school, he had an annual individualized education plan ("IEP"); received various program modifications, supports, and adaptations; and participated in daily special education. (Tr. at 60, 327–83, 393–408.) In terms of home life, Plaintiff described that he lives at home with his parents, does various

chores, does not attend any social events, typically receives rides to his (then) part-time job from others, and has no set schedule for when he goes to bed because he "get[s] a lot of issues in [his] head, and [his] brain's trying to figure out a way to put [himself] to sleep." (Tr. at 51–52, 65–66.) Plaintiff stated that he relies on his family to remind him to maintain some aspects of his personal hygiene, which his father corroborated. (Tr. at 64–65, 70–71.) He testified that he does not think he could live independently and perform day-to-day activities such as negotiate his own lease, grocery shop, or budget. (Tr. at 54–55.) A state psychologist noted that Plaintiff's home activities include playing video games, riding a bike, and watching television, among other things (Tr. at 580), which Plaintiff corroborated, noting that he plays video games or watches videos to help him cope with symptoms of his anxiety and depression (Tr. at 66). Plaintiff also explained that he does not trust himself with operating the stove because his poor memory might lead to forgetting to turn it off, but can otherwise make simple meals. (Tr. at 57.) His father testified that Plaintiff can become overwhelmed with the stress of daily events, and that when this happens, Plaintiff "sits in the dark in his room . . . [a]nd it takes him about at least 45 minutes to an hour before he even responds to [his father]." (Tr. at 76.)

Since high school, Plaintiff has been attending mental health treatment at Solutions Behavioral Healthcare Professionals ("SBHP") to improve his emotional regulation. (Tr. at 714–62.) His father testified that his therapist at SBHP intends to implement a plan to have a personal care assistant ("PCA") visit Plaintiff at home—and potentially go with him to a job—to help him, but that low staffing levels for such assistants has delayed implementing this plan. (Tr. at 69, 76–77.)

In terms of past work, Plaintiff testified that he has never had a full-time job. (Tr. at 54.) He stated that he has had a past part-time job as a dishwasher but the manager told him "don't come back" after he asked if he could take a break. (Tr. at 49.) Plaintiff also points to his termination from a part-time role at Subway in January 2021 where the reasons for termination after three months included that "[h]e still cannot perform the job" because he cannot "wrap a sub[,] . . . wait on a customer from start to finish[,]" [or] . . . count as a full employee on the schedule[.]" (Tr. at 260.) The termination form also notes that Plaintiff "get[s] easily distracted" and "cannot follow thr[ough] with task[s][.]" (*Id.*) Plaintiff also testified that at the time of his hearing, he had been working part time at a Dollar Tree for about three months cashiering and stocking merchandise, and that he had some difficulty with cashiering but could ask for help and receive it. (Tr. at 47–48.)

In terms of full-time work, when the ALJ asked whether Plaintiff could work for 40 hours a week at his Dollar Tree job, Plaintiff responded that he could not because he would run out of breath from a combination of his chest deformity causing pain and his difficulty managing anxiety in high-pressure moments. (Tr. at 50, 63 ("And if there's too many people, I will get very anxious, and I will have to step away to go and take a breather because my anxiety will hurt my ribcage.").) Plaintiff's father testified that he does not think Plaintiff could work any job for 40 hours per week because of his breathing problems and anxiety, stating that when he gets overwhelmed "he has to walk away . . . to go hide and settle down, calm down" which can take "a half-hour, or sometimes longer." (Tr. at 77–78.) The vocational expert testified that a hypothetical person who needed a job coach to help them learn to do a job or keep them on task would not receive such accommodations

from an employer, but could from an outside agency, although he noted that "typically, when we involve a job coach, that person at least initially, isn't ready for competitive employment, and needs that extra help." (Tr. at 82–83.) The ALJ asked for clarification about whether the vocational expert meant that the hypothetical accommodations required would be inconsistent with competitive work as described in the hearing, to which the vocational responded "[t]hat's correct" based on his experience as a certified rehabilitation counselor who has worked with disabled adults and with employers. (Tr. at 83.)

In his decision, the ALJ considered much of the evidence above, but found that "the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 21.) The ALJ specifically observed that Plaintiff had an IEP and received accommodations during high school; graduated from high school; interacts mostly with family and medical professionals; can perform household chores if given reminders; can make simple foods; does not have to manage money; and generally demonstrates good self-care aside from brushing his teeth. (Tr. at 18–19.) Based on these facts, the ALJ concluded that the record does not show Plaintiff cannot work full-time because there is no evidence that Plaintiff needs a highly structured setting, constant daily activity monitoring, or stints living in a group home or hospital or mental health treatment center. (Tr. at 19–20.) The ALJ also found it significant that Plaintiff has declined to take prescribed medications because he did not like them. (Tr. at 22.)

With this record and the ALJ's conclusions in mind, the Court turns to the caselaw Plaintiff cites to support his position. Plaintiff argues that three cases support a finding that

the RFC crafted by the ALJ fails to reflect Plaintiff's reliance on supportive environments such as high school, home, and medical provider offices, to function as he has in those environments.

In the first case, *Jessica B. v. Saul*, a plaintiff with severe impairments such as autism spectrum disorder, anxiety disorder, and depressive disorder, had been denied disability benefits. No. 19-cv-1276 (DSD/LIB), 2020 WL 5821993, at *3–4 (D. Minn. July 1, 2020), *R. and R. adopted*, 2020 WL 4364537 (D. Minn. July 30, 2020). There, the ALJ cited Plaintiff's completion of high school as evidence supporting that she could function in a work environment. *Id.* at *11 (citations omitted). The court found substantial evidence in the record did not support the ALJ's conclusions where the plaintiff had qualified for special education services before and throughout high school, had a yearly IEP modifying her schedule throughout her education, had difficulty regularly attending school or completing homework, and had graduated at 21 years old. *Id.* at *11–12 (citations omitted).

Plaintiff also points to *Blake R. v. Berryhill* in which an ALJ had found that a plaintiff with autism spectrum disorder and depressive and anxiety disorders, among other diagnoses, could work full-time as shown by his ability to perform household chores, make simple meals (with help using the stove or oven), possess a savings account (although his mother managed it), graduate from high school, sometimes manage his personal hygiene, and play video games. No. 17-cv-4273-KMM, 2019 WL 1229828, at *2, 5 (D. Minn. Mar. 15, 2019). There, the plaintiff argued that he had no work experience, had qualified for special education at school, struggled with personal hygiene, did not manage his own finances, and generally struggled with independent living skills. *Id.* at *3. The court held

that "[t]he ALJ's discussion of [the plaintiff's] 'functional activities' fails to adequately explain how his limited functioning even within his very supportive home and school environments translates to the ability to perform full-time, competitive work." *Id.* at *5. The court reversed and remanded the ALJ's decision for two reasons: first, because the ALJ's RFC failed to adequately reflect the plaintiff's "'need for a structured living environment' as required by [Social Security Ruling ("SSR")] 96-8[p]";[4] and second, because the record did not adequately support the ALJ's conclusion that the plaintiff's poor hygiene was a choice rather than a symptom of his mental impairment. *Id.* at *4–7.

Plaintiff's final case support is *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 988 (E.D. Mo. 2019). In *Lillard*, the court reversed an ALJ's determination that a plaintiff was not disabled and ordered an immediate award of benefits because substantial evidence did not support the ALJ's conclusion. *Id.* The *Lillard* plaintiff only went into the community when accompanied by family or a caseworker; lived with his family; only performed chores in his home environment; had periods of waxing and waning severity in his mental health symptoms; mainly engaged in non-interactive activities at home such as playing video games, writing, reading, and drawing; did not manage his own finances; substantially depended on others for his meals; and generally relied on his family to solve everyday living issues. *Id.* at 983. The court held that the ALJ's decision failed to determine the

[4] SSR 96-8p is policy interpretation binding the SSA that provides that an ALJ's "RFC assessment must be based on all of the relevant evidence in the case record, such as: . . . [the] need for a structured living environment . . . . " SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

extent to which the plaintiff's symptoms might have been mitigated by the supports and structure of his daily life. *Id.* at 983–84 (citing *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)) ("When individuals with mental illness have their lives structured to minimize stress and reduce their signs and symptoms, they 'may be much more impaired for work than their signs and symptoms would indicate.'"). It then found that "[t]here is simply no evidence in the record that [the plaintiff] can work on a sustained basis" and ordered an award of benefits rather than remanding the action. *Id.* at 988.

Considering the cases above, the question before the Court is whether a reasonable mind could accept that Plaintiff has the functional abilities to work full-time on the record here. *Biestek*, 139 S. Ct. at 1154. In answering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence; instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

On the facts of this case and the caselaw before it, the Court is persuaded that the ALJ's decision here is not supported by substantial evidence in the record as a whole. Admittedly, this is a close case. Some evidence in the record, when viewed alone, supports the ALJ's decision. Yet the Court agrees with Plaintiff that a reasonable mind would not accept the ALJ's RFC in this matter based on the record as a whole. Specifically, the Court finds that the ALJ failed to adequately explain how Plaintiff can perform a full-time job where the combined evidence creates a picture of a person who needs significant supports

and structure to function, and has spent much of his time and demonstrated functional abilities in such settings. *Lillard*, 376 F. Supp. 3d at 983. This is not to say that Plaintiff cannot develop independent living skills to increase his functional abilities in the future. The ALJ's decision, however, should be based on current functional ability, not potential capacity.

The Court finds that the ALJ needed to adequately consider the structured settings in which Plaintiff's previous functioning has occurred and the effects of those structured settings on his functional abilities. *See Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1200.F); *accord Blake*, 2019 WL 1229828, at *4. "[T]o find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)); *see also* SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" for "8 hours a day, for 5 days a week, or an equivalent work schedule.").

Here, the record shows that Plaintiff has had significant accommodations and support for his daily activities similar to the plaintiffs in *Jessica B.*, *Blake R.*, and *Lillard*. For example, Plaintiff qualified for special education services before and throughout high school and had a yearly IEP. (Tr. at 60, 327–83.) He also had significant absences during some school years, including anywhere from 8–20 absences during each high school year,

from 7–25 absences during his middle school years, and from 6–42 absences during his elementary school years. (Tr. at 472.) His ability to perform certain tasks at home when prompted and/or supported—such as doing household chores, making simple meals, and maintaining personal hygiene—occur in an environment unlike a workplace where more stressors and less support will be the norm for 40 hours each week. (Tr. at 51–52, 57, 64–66, 70–71.) Likewise, Plaintiff's ability to play video games, watch videos, or ride a bike while at home occur in that same lower-stress, higher-support environment. (Tr. at 66, 580.) Plaintiff lives with his family, does not manage his own finances, and there is no evidence that he can live independently; instead, there are plans to try to obtain extra life skills coaching support for him from a PCA. (Tr. at 51–52, 54–55, 69, 76–77.)

On these facts, the Court finds that the ALJ fails to sufficiently support his conclusion that Plaintiff's limited functioning within his supportive school and home environments translates to his ability to perform full-time work without such supports and structure. The Court will not go so far as to recommend an award of benefits, as the *Lillard* court did, because on the record before it, the Court cannot find that "[t]here is simply no evidence in the record that [the plaintiff] can work on a sustained basis." *Lillard*, 376 F. Supp. 3d at 988. Instead, the Court finds that a remand of this action to the Commissioner is the better course so that the Commissioner can consider whether Plaintiff's RFC accurately reflects his functional abilities in light of the issues raised in this Report and Recommendation.

Accordingly, the Court recommends that this action be remanded to the Commissioner to consider whether and to what extent Plaintiff needs a structured living

environment pursuant to SSR 96-8p. 1996 WL 374184, at *5 (S.S.A. July 2, 1996). That analysis should include a determination of the extent to which Plaintiff's symptoms may have been mitigated by the supports and structure of his daily life, and whether Plaintiff is "more impaired for work than [his] signs and symptoms would indicate" because of such supportive, structured, stress-minimizing environments. *Lillard*, 376 F. Supp. 3d at 983–84 (citing *Andler*, 100 F.3d at 1393). A new RFC should then be created, supported by an explanation that connects Plaintiff's functional abilities in supported, structured environments in the record to Plaintiff's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" for "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).

## RECOMMENDATION

Based on the above, as well as on the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 9) be **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. 13) be **GRANTED IN PART** and **DENIED IN PART**; and

3. The matter be remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Recommendation.

DATED: November 7, 2023

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).